1  Samuel R. Randall (No. 024517)
2  **RANDALL LAW PLLC**
   4742 North 24th Street, Suite 300
3  Phoenix, Arizona 85016
   Telephone:    602.328.0262
4  Facsimile:    602.926.1479
   Email:        srandall@randallslaw.com
5

6  Michael A. Josephson (*pro hac vice forthcoming*)
   Andrew W. Dunlap (*pro hac vice forthcoming*)
7  **JOSEPHSON DUNLAP LLP**
8  11 Greenway Plaza, Suite 3050
   Houston, Texas 77046
9  Telephone:    713.352.1100
   Facsimile:    713.352.3300
10 Emails:       mjosephson@mybackwages.com
                 adunlap@mybackwages.com
11

12 Richard J. (Rex) Burch (*pro hac vice forthcoming*)
13 **BRUCKNER BURCH PLLC**
   11 Greenway Plaza, Suite 3025
14 Houston, Texas 77046
   Telephone:    713.877.8788
15 Email:        rburch@brucknerburch.com
16

17 **ATTORNEYS FOR TODD AND**
   **THE HOURLY EMPLOYEES**
18

19              **UNITED STATES DISTRICT COURT**
                   **DISTRICT OF ARIZONA**
20                  **PHOENIX DIVISION**

21 Kevin Todd, Individually and for Others          | **Case No. _____**
22 Similarly Situated,
                                                     | **ORIGINAL CLASS AND**
23        Plaintiff,                                 | **COLLECTIVE ACTION**
                                                     | **COMPLAINT FOR DAMAGES**
24    v.
                                                     | **(1) Failure to Pay Overtime Wages**
25 Maricopa Ambulance, LLC, a Delaware              | **(Fair Labor Standards Act, 29**
26 limited liability company,                        | **U.S.C. § 201, *et seq.*);**
27        Defendant.
28

**(2) Failure to Timely Pay Earned Wages (Arizona Wage Act, A.R.S. § 23-350, *et seq.*).**

**(Jury Trial Demanded)**

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Kevin Todd (Todd) brings this class and collective action to recover unpaid wages and other damages from Maricopa Ambulance, LLC (Maricopa).

2.      Maricopa employed Todd as one of its Hourly Employees (defined below).

3.      Todd and the other Hourly Employees regularly work more than 40 hours a workweek.

4.      Maricopa pays them by the hour.

5.      But Maricopa does not pay Todd and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

6.      Instead, Maricopa pays Todd and the other Hourly Employees non-discretionary bonuses that it fails to include in their regular rates of pay for overtime purposes (Maricopa's "bonus pay scheme").

7.      Maricopa's bonus pay scheme violates the Fair Labor Standards Act (FLSA) by failing to compensate Todd and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

8.      And Maricopa thus fails to timely pay all earned wages due on designated paydays and upon termination of employment, in violation of the Arizona Wage Act (AWA).

### JURISDICTION & VENUE

9.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10.     This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11.     This Court has general personal jurisdiction over Maricopa because it maintains its principal place of business in Arizona.

12.     Venue is proper because Maricopa maintains its principal place of business in Scottsdale, Arizona, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

PARTIES

13.     Maricopa employed Todd as a paramedic in Arizona from approximately April 2024 until November 2024.

14.     Throughout his employment, Maricopa paid Todd under its bonus pay scheme.

15.     Todd's written consent is attached as **Exhibit 1**.

16.     Todd brings this class and collective action on behalf of himself, and other similarly situated Maricopa employees paid under its bonus pay scheme.

17.     The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Maricopa employees who were paid a bonus not included in their regular rate of pay during the last three years through final resolution of this action (the "FLSA Collective Members").**

18.     The putative AWA class of similarly situated employees is defined as:

> **All hourly Maricopa employees who worked in Arizona who were paid a bonus not included in their regular rate of pay during the last one year through final resolution of this action (the "Arizona Class Members").**

19.     The FLSA Collective Members and the Arizona Class Members are collectively referred to as the "Hourly Employees."

20.     Maricopa is a Delaware limited liability company headquartered in Scottsdale, Arizona.

21.    Maricopa may be served with process through its registered agent: CT Corporation System, 3800 N. Central Ave., Ste. 460, Phoenix, Arizona 85012.

## FLSA COVERAGE

22.    At all relevant times, Maricopa was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

23.    At all relevant times, Maricopa was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

24.    At all relevant times, Maricopa was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

25.    At all relevant times, Maricopa had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26.    At all relevant times, Todd and the other Hourly Employees were Maricopa's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

27.    At all relevant times, Todd and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

28.    Maricopa "provides emergency and non-emergency ambulance services in Maricopa County, including 9-1-1 services to the cities of Scottsdale, Glendale, Goodyear and Surprise," as well as "comprehensive non-emergency services to hospital and health care facility customers" with a team of "nearly 400 EMS professionals."[1]

---

[1] https://www.maricopaambulance.com/about/ (last visited April 23, 2025).

29.    To meet its business objectives, Maricopa employs workers, including Todd and the other Hourly Employees, to transport and care for patients.

30.    For example, Maricopa employed Todd as a paramedic in and around Phoenix from approximately April 2024 until November 2024.

31.    As a paramedic, Todd's primary job duties included ensuring the ambulance he operated was sufficiently stocked, driving or riding in an ambulance, receiving and responding to calls, evaluating patients' illness or injury, providing medical care, transporting patients to appropriate medical facilities, and completing required paperwork.

32.    Throughout his employment, Todd regularly worked more than 40 hours a workweek.

33.    Indeed, Todd typically worked approximately 12 hours a day and 3 to 4 days a week "on the clock" (36 to 48 hours a workweek).

34.    Indeed, during the third week of July 2024, Todd worked approximately 50 hours during the workweek.

35.    Likewise, the other Hourly Employees typically work approximately 12-hour shifts and 3 to 4 days a week "on the clock" (36 to 48 hours a workweek).

36.    Todd and the other Hourly Employees are required to report their "on the clock" hours worked via Maricopa's designated timekeeping system.

37.    Maricopa agreed to pay Todd approximately $23.10 an hour.

38.    Maricopa similarly agreed to pay the other Hourly Employees a similar hourly rate.

39.    But Maricopa does not pay Todd and the other Hourly Employees at the required premium overtime rate for all hours worked in excess of 40 in a workweek.

40.    Instead, Maricopa pays Todd and the other Hourly Employees under its bonus pay scheme.

41.     Specifically, Maricopa pays Todd and the other Hourly Employees non-discretionary bonuses, including sign-on bonuses, that it fails to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

42.     For example, Maricopa agreed, prior to Todd beginning his employment as a full-time paramedic, to pay him a $35,000 sign-on bonus:

> **2.     Bonus.** Upon signing this Agreement, Employee shall be eligible for a sign-on bonus of $35,000.00 (thirty-five thousand dollars), with $15,000.00 paid upon successful completion of 30 days of employment including employee orientation, $10,000.00 paid upon successful completion of six (6) months of employment, and $10,000.00 paid upon successful completion of twelve (12) months of employment. Bonus payments will be subject to withholding of required federal and/or state taxes.

43.     But Maricopa failed to include any portion of this sign-on bonus paid to Todd in his regular rate of pay for overtime purposes.

44.     Thus, under its bonus pay scheme, Maricopa does not pay Todd and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek, in violation of the FLSA and AWA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

45.     Todd brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

46.     Like Todd, the other Hourly Employees are victimized by Maricopa's bonus pay scheme.

47.     Other Hourly Employees worked with Todd and indicated they were paid in the same or similar manner under Maricopa's bonus pay scheme.

48.     Based on his experience with Maricopa, Todd is aware Maricopa's bonus pay scheme was imposed on other Hourly Employees.

49.     The Hourly Employees are similarly situated in the most relevant respects.

50.     Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

51.    Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

52.    Rather, Maricopa's bonus pay scheme renders Todd and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek.

53.    Maricopa's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

54.    Maricopa's records also show it paid Todd and the other Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

55.    The back wages owed to Todd and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

56.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Maricopa's records, and there is no detraction from the common nucleus of liability facts.

57.    Therefore, the issue of damages does not preclude class or collective treatment.

58.    Todd's experiences are therefore typical of the experiences of the other Hourly Employees.

59.    Todd has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

60.    Like each Hourly Employee, Todd has an interest in obtaining the unpaid wages owed under federal and Arizona law.

61.    Todd and his counsel will fairly and adequately protect the interests of the Hourly Employees.

62.    Todd retained counsel with significant experience in handling complex class and collective action litigation.

63.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Maricopa will reap the unjust benefits of violating the FLSA and AWA.

64.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

65.    Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Maricopa.

66.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

67.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

68.    Among the common questions of law and fact are:

    a.    Whether Maricopa paid the Hourly Employees non-discretionary bonuses;

    b.    Whether Maricopa failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

    c.    Whether Maricopa failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

    d.    Whether Maricopa failed to timely pay all wages due to the hourly employees;

    e.    Whether Maricopa's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

    f.    Whether Maricopa's violations were willful.

69.    As part of its regular business practices, Maricopa intentionally, willfully, and repeatedly violated the FLSA with respect to Todd and the other Hourly Employees.

70.     There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

71.     The Hourly Employees are known to Maricopa, are readily identifiable, and can be located through Maricopa's business and personnel records.

### MARICOPA'S VIOLATIONS WERE WILLFUL

72.     Maricopa knew it employed Todd and the other Hourly Employees.

73.     Maricopa knew it was subject to the FLSA's overtime provisions.

74.     Maricopa knew the FLSA required it to pay non-exempt employees, including Todd and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

75.     Maricopa knew Todd and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Maricopa's timekeeping system.

76.     Maricopa knew Todd and the other Hourly Employees were non-exempt employees entitled to overtime pay.

77.     Maricopa knew it paid Todd and the other Hourly Employees non-discretionary bonuses.

78.     Maricopa knew it was required to include these non-discretionary bonuses in their regular rates of pay.

79.     Maricopa knew these non-discretionary bonuses were not included in Todd's and the other Hourly Employees' regular rates of pay for overtime purposes.

80.     And Maricopa knew the FLSA require it to pay Todd and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

81.    Maricopa's failure to pay Todd and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

82.    Maricopa knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Todd and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

### COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

83.    Todd brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

84.    Maricopa violated, and is violating, the FLSA by employing non-exempt employees such as Todd and the other Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

85.    Maricopa's unlawful conduct harmed Todd and the other Hourly Employees by depriving them of overtime wages they are owed.

86.    Accordingly, Maricopa owes Todd and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

87.    Because Maricopa knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Maricopa owes Todd and the other Hourly Employees these wages for at least the past 3 years.

88.    Maricopa is also liable to Todd and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

89.     Finally, Todd and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY EARNED WAGES UNDER THE AWA
### (ARIZONA CLASS)

90.     Todd brings his AWA claim on behalf of himself and the other Arizona Class Members pursuant to FED. R. CIV. P. 23.

91.     The conduct alleged violates the AWA. A.R.S. §§ 23-350, *et seq.*

92.     At all relevant times, Maricopa was Todd's and the other Arizona Class Members' "employer" within the meaning of the AWA. *See* A.R.S. § 23-350(3).

93.     At all relevant times, Maricopa employed Todd and the other Arizona Class Members as its covered "employees" within the meaning of the AWA. *See* A.R.S. § 23-350(2).

94.     Todd's and the other Arizona Class Members' outstanding earned overtime wages are "wages" within the meaning of the AWA. *See* A.R.S. § 23-350(7).

95.     The AWA requires employers, like Maricopa, to timely pay employees, including Todd and the other Arizona Class Members, "all wages due … up to that date" on their regular established paydays. A.R.S. § 23-351(C).

96.     The AWA further requires employers, like Maricopa, to timely pay employees, including Todd and the other Arizona Class Members, all earned overtime wages no later than sixteen days after the end of the most recent pay period. A.R.S. § 23-351(C)(3).

97.     The AWA prohibits employers, like Maricopa, from withholding or diverting any portion of an employee's earned wages. A.R.S. § 23-352.

98.     Maricopa violated, and is violating, the AWA by failing to timely pay, and instead willfully withholding earned overtime wages from Todd and the other Arizona Class Members. *See* A.R.S. §§ 23-351(C)(3) and 23-352.

99.     Maricopa's unlawful conduct harmed Todd and the other Arizona Class Members by depriving them of timely payment of the full overtime wages they are owed.

100.    Accordingly, Maricopa owes Todd and the other Arizona Class Members the difference between the rate actually paid and the required overtime rate, which to date, remains outstanding.

101.    Maricopa is liable to Todd and the other Arizona Class Members for treble damages. *See* A.R.S. § 23-355.

102.    Finally, Todd and the other Arizona Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

### JURY DEMAND

103.    Todd demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Todd, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order designating the Arizona Class as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Todd and his counsel to represent the interests of the Arizona Class;

d.    An Order finding Maricopa liable to Todd and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding Maricopa liable to Todd and the Arizona Class Members for unpaid earned wages owed under the AWA, plus treble damages;

- 12 -

f.    A Judgment against Maricopa awarding the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA and/or AWA;

g.    An Order awarding attorney's fees, costs, and expenses;

h.    Pre- and post-judgment interest at the highest applicable rates; and

i.    Such other and further relief as may be necessary and appropriate.

Dated: April 28, 2025

Respectfully submitted,

**RANDALL LAW PLLC**

By: */s/ Samuel R. Randall*
Samuel R. Randall (No. 024517)
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
602-328-0262 – Telephone
602-926-1479 – Facsimile
srandall@randallslaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR TODD &
THE HOURLY EMPLOYEES**